UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOSTAFA AHMADI, *Plaintiff*, v. NORMAN THATCHER SCHARPF, in his official capacity as Consul General, U.S. Consulate General in Frankfurt, *et al.*, *Defendants*. | No. 23-cv-953 (DLF) |

### MEMORANDUM OPINION

Plaintiff Mostafa Ahmadi is an Iranian national seeking to enter the United States to conduct research at the Massachusetts Institute of Technology. Ahmadi applied for a nonimmigrant J-1 visa, and his wife and son applied for derivative visas. Ahmadi brought this action on behalf of himself and his family under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1), and Mandamus Act, 28 U.S.C. § 1361, to compel a final decision on their visa applications. Pet. at 8, Dkt. 1. He contends that the delay in adjudicating their visa applications has been unreasonably long. Before the Court is the defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss at 1, Dkt. 6. For the reasons that follow, the Court will grant the motion and dismiss the Petition under Rule 12(b)(6).

I.  **BACKGROUND**

  A.  **Statutory and Regulatory Background**

A noncitizen "who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist or leader in a field of specialized knowledge or skill" who seeks to enter the

United States as an exchange visitor may apply for a "J-1" nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(J). The noncitizen "spouse [or] minor child" of a J-1 visa holder may additionally apply for a "J-2" nonimmigrant visa. *Id.* The "Secretary of State shall require every alien applying for" a J-category visa "to submit to an in person interview with a consular officer" unless a waiver is obtained. *Id.* § 1202(h)(1).

After a noncitizen has "properly completed and executed" a "visa application," a "consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order . . . discontinue granting the visa." 22 C.F.R. § 41.121. "No visa or other documentation shall be issued" if (1) "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law"; (2) "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder"; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g). In 2002, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002, which, among other things, provided that "[n]o nonimmigrant visa under [8 U.S.C. § 1101(a)(15),]" including J-category visas, "shall be issued to any alien from a country that is a state sponsor of international terrorism unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate . . . agencies, that such alien does not pose a threat to the safety or national security of the United States." Pub. L. No. 107-173, § 306, 116 Stat. 543, 555 (2002) (codified at 8 U.S.C. § 1735). As of January 19, 1984, the Secretary of State has designated Iran a "state sponsor of international terrorism." *State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism [https://perma.cc/Z5MQ-LWR3].

**B.     Factual Background[1]**

Mostafa Ahmadi is an Iranian citizen who currently serves as a researcher "working on developing model-type physical polymer hydrogels" in Mainz, Germany.  Pet. ¶¶ 3, 10.  Ahmadi "has a 3-year grant from the German Research Foundation in collaboration with MIT," but "[t]o complete his project, [he] must perform a Forced Rayleigh Scattering diffusivity measurement on his samples . . . at MIT."  *Id.* ¶ 3.  Ahmadi's wife Floria Modirrousta is a "student in Finance and Accounting at the JGU Mainz," and they have a son Adria Ahmadi.  *Id.* ¶¶ 1, 4.  In April 2022, Ahmadi applied for a nonimmigrant J-1 visa, and his wife and son applied for "derivative visa[s]."  *Id.* ¶ 1.  In May 2022, they "appeared for a visa interview at the U.S. Consulate General in Frankfurt," and "[a]fter the interview, the [consular] officer informed [Ahmadi] that these visa applications were being placed in so-called 'administrative processing.'"  *Id.* ¶¶ 1, 16, 17.  "[I]n anticipation of [the] timely approval of [their] visas" by September 2022 (the "originally scheduled" date of Ahmadi's MIT visit), Ahmadi canceled his family's public health insurance in June 2022.  *Id.* ¶ 5.  Ahmadi then purchased private health insurance "at the unusually high cost of paying €560" so "his family would have coverage in the short term during the delay."  *Id.*  Ahmadi "has inquired as to the status of these visa applications on numerous occasions and

---

[1] When deciding a Rule 12(b)(6) motion, the Court may consider only the petition itself, documents attached to the petition, documents incorporated by reference in the petition, and judicially noticeable materials.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  At this motion-to-dismiss stage, the court may take judicial notice of publicly available information on official government websites.  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of an official government website).

received no meaningful responses." *Id.* ¶ 18. Their applications thus remain "stuck in . . . 'administrative processing'" without a final decision.[2] *Id.* ¶ 1.

Still waiting on a final decision, on April 6, 2023, Ahmadi sued the Consul General in Frankfurt Norman Scharpf, the Deputy Chief of Mission in Germany Woodward Price, and Secretary of State Antony Blinken ("Defendants"). *Id.* ¶¶ 11–13. Ahmadi brings claims on his own and his family's behalf, contending the adjudication of their pending visa applications has been unreasonably delayed in violation of 5 U.S.C. §§ 555(b), 706(1). *See* Pet. ¶¶ 15–29. If relief under the APA is not granted, Ahmadi seeks in the alternative relief under the Mandamus Act. *See id.* ¶¶ 30–35. As relief, Ahmadi requests, among other things, an order "[m]andating that Defendants process Plaintiff and his family's cases within fifteen (15) calendar days of this order or as soon as reasonably possible." *Id.* ¶ 36. On June 20, 2023, the defendants moved to dismiss.

## II. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal law empowers federal district court judges to hear only certain kinds of cases, and the plaintiff bears the burden of establishing that her case falls within that limited jurisdiction. *Id.* When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual

---

[2] The Court will not take judicial notice of Ahmadi's and his family members' current visa statuses based on the government's representations that the State Department's "Visa Status Check" website lists Ahmadi's application as "Refused." *See* Mot. to Dismiss at 5. As discussed in note 1, *supra*, the Court may take judicial notice of "information posted on official public websites of government agencies." *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016). But neither party has provided the Court with Ahmadi's passport number which is required to access the webpage. *See Visa Status Check*, U.S. Dep't of St., https://ceac.state.gov/CEACStatTracker/Status.aspx [https://perma.cc/MVL7-35NT]. As such, the Court cannot "accurately and readily determine[]" each plaintiff's visa status "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

### III. ANALYSIS

#### A. Defendants' Threshold Arguments

The defendants raise two threshold arguments for dismissal. They argue first, Ahmadi lacks Article III standing to sue, and second, Ahmadi's suit is barred under the doctrine of consular nonreviewability. *See* Mot. to Dismiss at 7–13, 23–27, Dkt. 6. The Court notes that the facts in this case are nearly identical to those in *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523 (D.D.C. Feb. 7, 2024), in which Iranian students brought unreasonable-delay claims as to their F- and J-type visa applications. In that case, the Court rejected the same threshold arguments that the defendants repeat here (essentially verbatim). Seeing no reason to diverge from those rulings, the Court again rejects these arguments.

##### 1. *Article III Standing*

Ahmadi has established Article III standing to seek a final decision on his and his family members' visa applications. First, he has suffered a concrete harm supporting injury in fact. The defendants are correct to note that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see* Mot. to Dismiss at 8. Contrary to the defendants' assertions, however, Ahmadi, like the plaintiffs in *Pourabdollah*, has adequately alleged that the delay of his J-1 visa application has injured his "concrete professional and financial interest in earning an advanced degree." *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023); *see Pourabdollah*, 2024 WL 474523, at *3–4. Specifically, the delay has prevented him from "complet[ing] his project" at MIT and will "likely [cause him to] lose the opportunity to continue his research and funding." Pet. ¶ 3. The delay of his family members' visas also caused him to incur €560 to pay for private health insurance "in

anticipation of timely approval of [their] visas." *Id.* ¶ 5. Such "monetary harms" "readily qualify" as concrete harms. *TransUnion*, 141 S. Ct. at 2204.

Second, Ahmadi's injuries are redressable. The defendants contend that Ahmadi "does not plead that" an exception to Section 1735 applies, so "commands to State Department officials to re-adjudicate their nonimmigrant visa applications . . . cannot remedy their supposed injuries." Mot. to Dismiss at 12–13. Like other judges in this district, the Court rejected this position in *Pourabdollah*. *See Pourabdollah*, 2024 WL 474523, at *4; *see also Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023). The defendants fail to assume the truth of the allegations contained in the Petition: specifically, Ahmadi's and his family members' visa applications are still pending in "administrative processing."[3] Pet. ¶ 17. Review of their applications is thus not complete, including any final determination as to the applicability of Section 1735's state-sponsor-of-terrorism bar. Their alleged injuries from the delay "may be redressed with an order to complete that review more expeditiously." *Khazaei*, 2023 WL 6065095, at *4.

Further, the Court is unpersuaded by the defendants' contention that Secretary Blinken "has no role in adjudicating an application for a visa," so he cannot redress Ahmadi's alleged injuries. Mot. to Dismiss at 22. This argument is without basis.[4] "While the Secretary of State

---

[3] Ahmadi suggests he "received a communication from the Consulate that state[d] his visa had been . . . 'refused for administrative processing.'" Opp'n at 6. This too is outside the four corners of the Petition, and the Court must assume the truth of the Petition's allegations at this stage.

[4] The defendants are correct that Ahmadi "offers no argument in response." Reply at 11, Dkt. 9. But "[s]tanding can be raised at any point in a case proceeding and, as a jurisdictional matter, may be raised, *sua sponte*, by the court." *Cierco v. Mnuchin*, 857 F.3d 407, 415 (D.C. Cir. 2017). The Court carries a "special obligation to satisfy [itself] of [its] own jurisdiction" and "*must* resolve the doubt, *sua sponte* if need be." *Id.* at 415–16 (cleaned up). Likewise, the Court may satisfy itself *sua sponte* that a particular defendant is capable of redressing a plaintiff's alleged injury.

has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications 'within a reasonable time,' as the APA requires." *Khazaei*, 2023 WL 6065095, at *4 (citing cases). The Court thus concludes that Ahmadi has established Article III standing.

        2.    *Doctrine of Consular Nonreviewability*

The Court also rejects the defendants' contention that the doctrine of consular nonreviewability bars Ahmadi's suit. "[T]he consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."[5] *Al-Gharawy v. DHS*, No. 21-cv-1521, 2022 WL 2966333, at *11 (D.D.C. July 27, 2022). Here, the Petition plainly alleges that Ahmadi's "and his family's visa applications remain stuck in . . . 'administrative processing.'" Pet. ¶ 1. At the motion-to-dismiss stage, the Court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. For the reasons stated in note 2, *supra*, the Court is unable to substitute the Petition's allegations with the defendants' representations that Ahmadi's and his family members' applications were "Refused." *See* Mot. to Dismiss at 5. Even assuming the truth of the defendants' representations, as the Court noted in *Pourabdollah*, *see* 2024 WL 474523, at *5, and Ahmadi notes, *see* Opp'n at 10, Dkt. 7, "[w]hile a visa application must be either granted or refused at an initial interview, that refusal is often not final. Instead, a refusal may be entered for 'administrative processing,' and applicants may have an opportunity to provide additional information to establish eligibility." *Ramirez v. Blinken*, 594

---

[5] As explained in *Pourabdollah*, the Court does not share the defendants' view that the D.C. Circuit's decision in *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021), expanded the doctrine of consular nonreviewability to administrative-processing claims like Ahmadi's. *See Pourabdollah*, 2024 WL 474523, at *4–5. The Court incorporates its discussion in *Pourabdollah* here.

F. Supp. 3d 76, 87 (D.D.C. 2022). The doctrine of consular nonreviewability thus has no application here.

**B.    Merits**

Although the Court rejects the defendants' threshold arguments, it ultimately agrees with them that Ahmadi's APA and mandamus claims fail under Rule 12(b)(6).

Courts review claims of unreasonable delay in processing immigration petitions according to "the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). Under 5 U.S.C. § 706(1), a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." From this text emerges two requirements for an unreasonable-delay claim.[6] First, a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Second, the Court must evaluate "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up).

---

[6] The defendants raise a somewhat puzzling argument that "any statutory claim challenging the conditions of entry, visa issuance and admission, of non-citizens is non-justiciable." Mot. to Dismiss at 21. If this is another version of their consular nonreviewability argument, it fails for the reasons stated in Section III.A.2, *supra*. If the defendants are arguing, more broadly, that Ahmadi has no judicial recourse for administrative delay, the Court disagrees. As the Supreme Court has held, 5 U.S.C. § 706(1) "provides relief for a failure to act." *S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). True, Ahmadi fails to state a claim under this statute, but "[a] court does not lack jurisdiction merely because the complaint may fail to state a claim." *Boose v. District of Columbia*, 786 F.3d 1054, 1058 (D.C. Cir. 2015). Prudence does not dictate otherwise. *See Khan v. Blome*, No. 22-cv-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022) ("[A]s the Supreme Court has explained, a court 'cannot limit a cause of action that Congress has created merely because prudence dictates.'" (quoting *Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 128 (2014)).

The Court will assume without deciding that Ahmadi alleges the defendants are subject to a discrete, required duty because, in any event,[7] he has not suffered an unreasonable delay "so egregious as to warrant mandamus." *Id.* To evaluate whether an agency's delay is unreasonable, the D.C. Circuit prescribed a six-factor test in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal quotation marks omitted) (quoting *TRAC*, 750 F.2d at 80). The *TRAC* factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).

---

[7] As the Court held in *Pourabdollah*, a delay in deciding whether to "[g]rant[] or refus[e] a visa to a[] [specific] applicant" "is clearly a discrete agency action" rather than a "broad programmatic attack." *Pourabdollah*, 2024 WL 474523, at *6 n.5 (quoting *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023)). Further, the Court is bound to follow the D.C. Circuit's holding that the APA "imposes a general but *nondiscretionary* duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–1100 (D.C. Cir. 2003) (emphasis added); *see Pourabdollah*, 2024 WL 474523, at *6 n.5.

1. *TRAC Factors 1 and 2*

The first two factors are often considered together, *see, e.g.*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), *appeal dismissed*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021), and the first *TRAC* factor is often considered "the most important" of the six. *In re Core Commc'ns, Inc.*, 531 F.3d at 855. In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Factors one and two favor the defendants.[8] As Ahmadi concedes, *see* Opp'n at 21–22, "Congress has not supplied a rule of reason by imposing a statutory deadline on J-1 visa processing," *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022).[9] "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine the reasonableness of a visa-application delay. *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "District courts have generally found that immigration delays in

---

[8] Contrary to Ahmadi's assertion, *see* Opp'n at 18–20, it is not premature to adjudicate his unreasonable-delay claim at the motion-to-dismiss stage. Courts in this district have routinely decided whether an agency's delay is unreasonable when processing claims at the motion-to-dismiss stage. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (collecting cases), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021); *Khan*, 2022 WL 17262219, at *4.

[9] Ahmadi argues 8 U.S.C. § 1571 "gives content to the rule of reasoning" because "[i]t is the sense of Congress that the processing of any immigration benefit application could be completed not later than 180 days after the initial filing of the application." Opp'n at 22 (quoting 8 U.S.C. § 1571(b)). The Court is unpersuaded. By its plain text, § 1571 applies to Immigration and Naturalization Service, not the State Department, and it governs "immigration benefit application[s]," not the *non*immigrant visa application at issue here. *See Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *2 n.2 (D.D.C. Feb. 16, 2022). Also, read contextually, § 1571(b) "is aspirational, rather than mandatory," further undermining any suggestion of a "Congressional timeline to apply." *Shen v. Pompeo*, No. 20-cv-1263, 2021 WL 1426025, at *8 (D.D.C. Mar. 24, 2021). Even if § 1571(b) were "to add some weight in a plaintiff's favor for the second *TRAC* factor," that additional weight does not overwhelm the other circumstances weighing in favor of the defendants under the first two *TRAC* factors. *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022).

excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Rahman*, 2023 WL 196428, at *4 (cleaned up). When the Petition was filed here, Ahmadi and his family were waiting approximately 12 months (now 21 months). This delay is reasonable under the circumstances and by comparison to similar student-visa cases. *See, e.g.*, *Shen v. Pompeo*, No. 20-cv-1263, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (holding that a 21-month delay in the adjudication of an F-1 student visa was not unreasonable); *Khazaei*, 2023 WL 6065095, at *6–7 (holding that a 12-month delay in the adjudication of F-1, J-1, and J-2 visas was not unreasonable); *Sawahreh*, 630 F. Supp. 3d at 162 (holding that a 15-month delay in adjudication of a J-1 visa was not unreasonable). Further, the reasonableness of this delay is further informed by the applicability of 8 U.S.C. § 1735(a), which requires the Secretary of State to make a finding that Ahmadi, his wife, and their child—all Iranian nationals—"do[] not pose a threat to . . . safety or national security" before issuing visas.

    2.    *TRAC Factor 4*

Many courts find the fourth *TRAC* factor to "carr[y] the greatest weight." *DaCosta v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022) (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023). In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)) (alterations and quotations omitted). The fourth factor considers the effect of prioritizing one agency action over others. *See TRAC*, 750 F.2d at 80. Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the

queue" and "simply move[] all others back one space." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991).

This factor also weighs in favor of the defendants. Ahmadi argues that he "is merely asking that Defendants engage in the standard processing of his visa," not "to be put ahead in line of others." Opp'n at 23. He also notes the insufficiency of "evidence in the record as to the existence of a queue." *Id.* The Court remains unpersuaded. Consular "processing capacity is presently a zero-sum game," so granting Ahmadi relief "would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022). Admittedly, the effect of prioritizing three visa applications may prove minimal, but "the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150. Ahmadi and his family members skipping ahead in line would amount to a "judicial reordering[] of agency priorities." *Rahman*, 2023 WL 196428, at *4 (cleaned up). Any such reordering of "the queue of applicants seeking adjudication" would be "inappropriate" here because there would be no demonstrable "net gain" in visa processing at large. *Tate*, 513 F. Supp. 3d at 149.

       3.    *TRAC Factors 3 and 5*

*TRAC* factors three and five concern the "health and welfare . . . at stake" and "the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. These factors, often considered in tandem, *see, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020), slightly favor Ahmadi. Ahmadi describes the hardship imposed by the delay, including health-care-related expenses, deferred family-planning decisions, and a possible loss in future research funding. *See* Pet. ¶¶ 2, 3, 5. Ahmadi also suggests that the "uncertainty of the delay ha[s] caused both [him] and his wife to

13

experience significant anxiety." *Id.* ¶ 4.  Taking these alleged adverse effects as true, as the Court must at this stage, *see Iqbal*, 556 U.S. at 679, Ahmadi is in a worse position than a visa applicant who merely claims that his life has been put "on hold" by the visa delay.  *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

            4.     *TRAC Factor 6*

The final *TRAC* factor requires the Court to "determine whether the agency has acted in bad faith in delaying action."  *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023).  This factor favors neither party.  Ahmadi alleges no facts amounting to bad faith, and he appears to concede that this *TRAC* factor is neutral.  *See* Opp'n at 24.  "[T]he lack of plausible allegations of impropriety does not weigh against [Ahmadi], and therefore does not alter the Court's analysis."  *Fakhimi*, 2023 WL 6976073, at *11; *see Khazaei*, 2023 WL 6065095, at *7 (concluding that the sixth *TRAC* factor "is neutral at best" because the plaintiffs' allegations of "disparate treatment of Iranian national students" were "merely conclusory").

Taken together, the *TRAC* factors heavily favor the defendants.  The Court thus concludes that Ahmadi has failed to state a claim for unreasonable delay under the APA and is also not entitled to mandamus relief.  Given his claims fail, the Court will deny his request for attorneys' fees and costs under the Equal Access to Justice Act.  *See* Pet. at 8; 28 U.S.C. § 2412 (only a "prevailing party" may receive fees and expenses).

## CONCLUSION

For the foregoing reasons, the Court will grant the defendants' Motion to Dismiss, Dkt. 6.

A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

February 12, 2024